DOROTHY KEENEY ET AL. *v.* FRANK B. BEASMAN
[No. 78, October Term, 1935.]

*Decided January 16th, 1936.*

The cause was argued before BOND, C. J., URNER, OF-FUTT, PARKE, SLOAN, SHEHAN, and JOHNSON, JJ.

*Maurice J. Pressman,* for the appellants.

*Robert E. Coughlan, Jr.,* and *Roszel C. Thomsen,* for the appellees.

OFFUTT, J., delivered the opinion of the Court.

Frank B. Beasman owns and operates a farm known as the "Fair Haven Farms Dairy" near Sykesville, Carroll County, Maryland. The entire farm is utilized for the production of milk, which he sells in bulk and in bottles, and distributes over a retail milk route from a truck, and in connection with it there is a 300-gallon pasteurizing plant. It contains about 600 acres of ground, of which part is in woodland, part in pasture, and the remainder in grass and grain, except for small lots used for gardens and the curtilages adjacent to dwellings occupied by the

owner and his tenants. The crops grown on the farm are fed on the place, the produce of the gardens is consumed by Beasman and his employees, none of the crops are sold, and, in short, altogether it constitutes a largely self-contained and complete dairying plant. The operation and management of it requires the kind of labor ordinarily incident to the management of any farm, such as tilling the soil, planting, cultivating, and harvesting the crops, caring for the livestock, and marketing the farm products.

On October 10th, 1934, Merhl Keeney, while employed by Beasman as a laborer on the farm, was engaged in removing a stump from an alfalfa field, and, in the course of his work, while attempting to make a hole under the stump in which to place dynamite, he ran a sliver of wood in his finger, causing an injury which eventually resulted in his death. His duties while employed by Beasman were principally farm duties; he was required to milk cows, cultivate crops, work on a hay wagon, drive a team; occasionally he cut hedges, washed buckets in the pasteurizing plant, did some cementing, and painted some farm implements.

On January 30th, 1935, the sworn claim for compensation of Mrs. Dorothy Keeney, the widow of Mehrl Keeney, and their two infant children, was filed with the State Industrial Accident Commission, and on February 9th it received an "Employer's Report of Injury" signed by Beasman, in which he described the nature and result of the accident, and stated that it had occurred in the course of Keeney's employment, and that medical attention had been rendered. The surgeon's report showed that such services had been engaged by the employer.

A hearing on the claim was requested by the employer and insurer, and the commission, after hearing the parties, disallowed the claim, apparently on the ground that at the time of the accident Keeney was a farm laborer engaged in service incidental to, and in connection with, agricultural pursuits or developments. From that finding the claimants appealed to the Court of Common Pleas of

Baltimore City, where the case was heard by the court without a jury. At the conclusion of the hearing, the court directed a verdict for the employer and insurer, and from that judgment this appeal was taken.

In addition to the facts stated above, it appeared that at the time of the accident there was in force a policy of insurance issued by the Maryland Casualty Company to Beasman, having the following coverage: "Farm Labor and Dairymen: All employees of whatever nature excluding in servants engaged upon or in connection with such farm, including Drivers, Chauffeurs (no private) and their Helpers, Outservants, Occasional Outservants, also Managers, Superintendents and Foremen if engaged wholly or partly in field work;" and the insurer, in assumed compliance with the Workmen's Compensation Law (Code, art. 101, sec. 1 *et. seq.*, as amended) certified the insurance to the commission, and in the notice stated that the business covered by the policy was that of "Farm Labor and Dairyman."

The appeal presents two questions: (1) Was the work in which Keeney was engaged at the time of the accident farm labor within the meaning of the Workmen's Compensation Law? and, (2) assuming that it was not, are the employer and insurer estopped from asserting that fact as a defense to appellants' claim by the policy of insurance issued upon his application to the employer by the insurer, and certified by the insurer to the State Industrial Accident Commission as in compliance with that law?

Code, art. 101, sec. 65, subsec. (3), as amended by chapter 354, Acts 1933, provides that " 'Employee' * * * shall not include farm laborers. 'Farm laborers,' as used in this Article, shall mean any employees who, at the time of the accident, are engaged in rendering any agricultural service, including the threshing or harvesting of crops, or who, at the time of the accident, are engaged in service incidental to and in connection with agricultural pursuits or developments, whether the employer be the farmer or other person undertaking or contracting with the

farmer to perform any such agricultural service, pursuit or development. This Article shall not apply to cutters of cord wood or fire wood, farm laborers, domestic servants, nor to country blacksmiths, wheelwrights or similar rural employments, unless these employments elect to come under this Article as provided in Section 33." If the employee at the time of the accident was engaged in farm labor as defined by the act, then, by the express and explicit language of the statute, its provisions were not applicable to him. It appears from that definition that it was the purpose of the Legislature to except from its provisions employees engaged in rendering "any" service "incidental to or connected with" agricultural pursuits "or developments."

The appellants contend that the main business of the employer was dairying; that the operation of the farm was merely incidental to that business; that dairying is not farming, nor is it incidental to, or connected with, any agricultural service, pursuit, or development; that at the time of the accident the employee was not a "farm laborer," within the definition of the statute; and that therefore its provisions were applicable to his case. The appellees assert the converse of that proposition.

Literally, *agri cultura* means the tillage or cultivation of the soil. But, like many words compounded of different elements, it has a meaning of its own broader than that of its elements considered separately, for from time immemorial it has been regarded as synonymous with husbandry, and includes, not only the cultivation of the soil and the raising of crops, but also "gathering in the crops and raising live stock" *(Oxford Dictionary)*, and, as a natural concomitant of those activities, marketing the products of the soil, the increase and the products yielded by the stock, such as wool and milk. That has been so from the earliest times.

Meliboeus, himself a husbandman, in the first of Virgil's Eclogues, speaks to Tityrus, another farmer, who is going into exile, driving his herds before him, of the pleasant ploughed fields, as though the cultivation of the fields

and the management of herds were branches of the same business, and in the first book of the Georgics, which was written for the rehabilitation of agriculture in Italy, the care and management of cattle is treated as a branch of agriculture, and Anthon stated that Virgil's rules concerning the care of cattle were taken from the works of the "ancient agricultural writers of his own country." In the *Oxford Dictionary* it is said that the restriction of the word to tillage alone is rare.

In *Rawle's Edition of Bouvier's Law Dictionary* this definition is given: "The cultivation of soil for food products or any other useful or valuable growths of the field or garden; tillage, husbandry; also, by extension, farming, including any industry practised by a cultivator of the soil in connection with such cultivation, as breeding and rearing of stock, dairying," etc. In *Philadelphia v. Davis,* 6 Watts & S. (Pa.) 269, 279, "farm products" were held to be "swine, horses, neat cattle, sheep, manure, cordwood, hay," as well as "vegetables, fruit, eggs, milk, butter, lard, and other provisions for the mouth." In *Davis v. Industrial Commission,* 59 Utah, 607, 206 P. 267, 268, a sheep herder was held to be an "agricultural laborer." In *State ex rel. Brittain v. Hayes,* 143 La. 39, 78 So. 143, it was held that a farmer who goes from place to place selling at retail the products of his farm is only pursuing the business or occupation of a farmer. In *Hill v. Georgia Casualty Co.* (Tex. Com. App.) 45 S. W. (2nd) 566, 567, it was held that one employed at a nursery for the propagation of trees, vines, shrubs, etc., was an agricultural laborer, and in *Greischar v. St. Mary's College,* 176 Minn. 100, 222 N. W. 525, 526 it was held that milking cows and plowing the fields on a dairy farm must "be considered the work of a farm laborer just the same as would be the same work upon any other sort of a farm."

These statements and conclusions are all consistent with the decision of this court in *Beyer v. Decker,* 159 Md. 289, 150 A. 804, 805. In that case Decker, the employer, owned and operated farms in Cecil County on which he "carried on a dairying business." He had a milk route on which

he delivered milk, and he shipped any surplus to a wholesaler. Beyer, the claimant, was regularly employed in dairy work, and drove the horse and wagon in which the surplus milk was carried to the railroad station for shipment to the wholesaler. While engaged in that work, he was struck by an engine and injured. The question in the case was whether that work was farm labor within the meaning of the Workmen's Compensation Law, and it was decided, and properly decided, that it was. In the opinion in that case the court said: "It may be that there are dairying operations now carried on upon such a scale, or under such circumstances, that they could not properly be classified as agricultural, but it is true that dairying operations are still carried on by many farmers as parts of general agricultural occupations." The appellant has seized upon that expression as support for the proposition that, where dairying is the principal business of the farm, the business is not to be regarded as an "agricultural service, pursuit or development," but the language of the opinion completely negatives any such idea. What the court had in mind in making that statement was obviously the distinction between the production and sale of milk yielded by cattle maintained on the farm as a part of its operation, and the business of buying and selling milk, or of manufacturing and selling milk products apart from, and independent of, any farm, for obviously in the latter case, the work, not having any connection with a farm, would not be agricultural in its nature. But where the milk sold is produced by cattle kept on the farm as a part of its operation, the business of producing and selling it is necessarily an agricultural pursuit, for the production of milk from cattle which consume the crops grown on the farm is as clearly an agricultural pursuit as raising sheep for their wool, or beef cattle for sale, or even of crops for sale. The fact that the farmer feeds his crops to cows, that they may yield milk which he can sell, does not make the business any less a farming business than if he had sold the crops directly. Nor is the nature of the business affected by the fact that to feed

his cows he may from time to time buy feed not grown on his own farm.

And as the work in which the employee was engaged when he was injured was incidental to his general employment, which was that of a farm laborer, the provisions of the statute were not applicable to him.

We have been urged to give the act a broad and liberal interpretation in favor of the employee to reach a different result. But, while such a rule may properly be invoked to aid the apparent purpose of a statute, it may not be used to evade its plain intent or to deny its clear mandates. When the Legislature has declared the policy of the State, it is not for the court to nullify its declaration. It is quite true that farming, which often involves the care of unruly and dangerous animals, the operation of complicated machinery, and the use of high explosives, may be a highly hazardous occupation, and it may be consistent with a sound economic policy to include it within the terms of the statute, but whether it is or not is a legislative, and not a judicial, question. The Legislature has said in unmistakable language that the act shall not apply to it, and this court may not by devious construction override its will.

The second question is not wholly free from difficulty. The Maryland Casualty Company issued to Frank B. Beasman a policy of insurance. No. 01—021444, effective May 12th, 1934, and expiring May 12th, 1935, which was in force at the time of the accident. Under that policy the insurer agreed "as respects personal injuries sustained by employees, including death at any time resulting therefrom, as follows:

"1. (a) To Pay Promptly to any person entitled thereto under the Workmen's Compensation Law and in the manner therein provided, the entire amount of any sum due, and all instalments thereof as they become due.

"(1) To such person because of the obligation for compensation for any such injury imposed upon or accepted by this Employer under such of certain statutes, as may be applicable thereto, cited and described in an endorse-

ment attached to this Policy, each of which statutes is herein referred to as the Workmen's Compensation Law."

It further agreed "To Indemnify this Employer against loss by reason of the liability imposed upon him by law for damages on account of such injuries to such of said employees as are legally employed wherever such injuries may be sustained within the territorial limits of the United States of America or the Dominion of Canada." A condition of the policy is that: "The Obligation of Paragraph One (a), foregoing are hereby declared to be the direct obligations and promises of the Company to any injured employee covered hereby, or, in the event of his death, to his dependents; and to each such employee or such dependent the Company is hereby made directly and primarily liable under said obligations and promises."

The issuance of this policy was in ordinary course certified to the commission, and on February 9th, 1935, the commission received a report of the injury from Beasman, with the following words printed thereon: "Send copy of this report to Maryland Casualty Company, Baltimore, Claim Division, 32 South Street, Baltimore, Maryland." The claimants contend that those facts are sufficient evidence of an election on the part of the employer to come under the terms of Code, article 101.

Code, art. 101, sec. 33 (1929 Supp.) in part provides that: "Any employer, his employee or employees engaged in works not extra-hazardous within the meaning of this Article may, by their joint election, filed with the Commission, accept the provisions of this Article and such acceptances when approved by the Commission, shall subject them to the provisions of this Article to all intents and purposes as if they had been originally included in its terms."

The entire compensation system is statutory. It extends only to such employments as are brought within its terms by the statute itself; so that whether a given employment is included in the system depends upon whether the language of the statute may reasonably be construed to include it. If it may not be so construed, the statute

does not apply to it. So, too, where general language of the statute is broad enough to include the particular employment, but by express language the Legislature sees fit to except it from the operation and effect of the statute, the statute does not apply. And, since the Legislature may exclude it altogether from the application of the statute, it may prescribe terms and conditions upon which it may be included in the general system. When the Legislature does except an employment from the application of the statute, but nevertheless prescribes conditions which, if performed, will result in its inclusion in the system, those conditions must be performed before the employment can be included.

The general language of the statute that "this Article is intended to apply to all extra-hazardous employments not specifically enumerated herein, and to all work of an extra-hazardous nature" (Code [1929 Supp.], art. 101, sec. 32, subsec. 46) is broad enough to include farm labor, but that kind of labor is expressly excepted from the application of the statute. It may, however, be included under the terms of the statute if three conditions concur: (1) That the employer and employee jointly elect to accept the statute; (2) that the joint election is filed with the commission; and (3) that the commission approve their acceptance. The provision that the acceptance be "filed" with the commission by unavoidable implication requires that the election be in writing, for no oral acceptance could be so filed.

Applying these somewhat obvious conclusions to the facts of this case, it seems manifest that there has been no election to bring the employment in issue here within the system. Assuming, for the question only, that procuring the policy and filing notice of the insurance with the commission was sufficient evidence of the employer's election to accept the statute, there is no evidence of any kind that the employee knew of that insurance, or that he agreed to accept the statute. And, as the statute can only apply to farm labor where both the employer and the employee accept it, the first and most important condition

stipulated by the statute fails, and the exception stands.

But an examination of the policy of insurance dispels the idea that it amounted to an election to accept the statute. Its purpose was limited by its terms to assuring the payment of compensation payable to any person "entitled thereto under the 'Workmen's Compensation Law,' because of the obligation for compensation * * * imposed upon or accepted by" the employer by that statute, and to indemnifying the employer for such payments as he might be required to make by virtue of such an obligation.

Unless it be inferred from the issuance of the policy and its approval by the commission, there was no evidence of any obligations imposed upon the employer to pay compensation to Merhl Keeney, the deceased employee. But it is argued, and with some force, that the act of Beasman in taking out a policy of insurance covering employees engaged in farm labor on his farm, the act of the insurance carrier in notifying the commission in writing of such insurance, and that it was issued "in compliance with" the Workmen's Compensation Law, and the act of the commission in tacitly approving the insurance, were sufficient evidence of an intent on the part of the employer to elect to accept the statute and of its approval of such acceptance by the commission. Because, it is said, if no insurance was required unless the employer elected to accept the act, and he did nevertheless procure insurance, his act in procuring it was some evidence of an election to accept the statute. But another inference equally reasonable may be drawn from the same facts, that is, that the insurance was procured not for the purpose of electing to accept the statute, but as a precaution to protect the employer in case it should be judicially determined that he was not engaged in an agricultural pursuit, service, or development, and that was the view taken by the court in *Clement v. Minning,* 157 Md. 200, 145 A. 485, in respect to similar facts. There the court said: "The insurance was obtained as a measure of precaution to protect the appellant against any liability to which he might be subject under the Workmen's Compensation Act

or otherwise by law. It could not extend the scope of the act or create, as between the insured and his employees, a liability which the law did not impose." And, since it was quite as reasonable to assume that the employer procured the insurance as protection against results which might follow a judicial construction of the statute determining, as the appellant has contended in this case, that the operation of his dairy farm was not an agricultural service, pursuit, or development, as to assume that it was intended as an acceptance of the statute, the claimants failed to meet the burden placed upon them of showing that the employer had elected to accept the statute, for that burden may not be met by a showing of fact which permits two inferences equally reasonable, one that there had been an election; the other, that there had been none; without any other proof or fact to show which was correct. The Legislature, no doubt, had that difficulty in mind when it required that a "joint election" of the employer and employee be "filed" with and "approved" by the commission. Here no election has been "filed," nor has the commission been called upon to "approve" any election, joint or otherwise.

The mere fact that the employer procured the insurance cannot therefore be accepted as an implied election. The legislative intent was clearly to require a definite and specific election, not necessarily in any particular form, but nevertheless in writing and plain enough to manifest an unmistakable intention of accepting the statute.

Nor can acceptance be inferred from the fact that the insurer notified the commission that the insurance policy was issued "in compliance with" the statute. The liability of the insurer, if it existed at all, would have been primary in this sense, that it could have been sued directly by the claimants. But its liability was contingent upon the liability of the employer under the statute. If the employer was not liable for compensation under the statute, then the insurer was not liable either, for the liability of the employer measured the liability of the insurer. 71 *C.J.* 915. The notice filed with the commission

by the insurer could not constitute an election on the part of the employer to accept the statute, and, since it imposed no obligation upon him, it imposed none upon the insurer. *Clement v. Minning, supra; Barnes v. Myers,* 163 Md. 206, 209, 161 A. 279.

It was suggested that other courts have reached a different conclusion upon similar facts. *Hillman v. Industrial Commn.,* 190 Wis. 196, 208 N.W. 928, 208; *Keaney's Case,* 217 Mass. 5, 104 N.E. 438. There is no proof of the statutes involved in those and other cases cited to the point, nor have they been called to our attention. We are not therefore in a position to comment upon them. But, in so far as they are inconsistent with the conclusions which have been announced and which are consistent with prior decisions of this court, they must be disregarded.

The Legislature has expressly prescribed the conditions essential to an acceptance of the statute. No one of those conditions has been performed in this case, and it is not for this court to substitute for those conditions other and different ones. The expropriation of private property to satisfy a claim for which there is no legal basis or justification, merely to gratify a humane or benevolent impulse, would be an extremely dangerous abuse of judicial power. And, while it is a settled rule of statutory construction that statutes are to be construed liberally to carry out the legislative intent, they may not be misconstrued to accomplish what the courts may believe the Legislature should have done but failed to do.

· Appellants also attach significance to the fact that the employer, at the request of the commission, furnished it an "Employer's Report of Injury," and also to the fact that the employer furnished medical treatment to his injured employee, as evidence of an intention to accept the statute. Obviously they had no such effect. The report was filed in response to the commission's request, which was issued after the filing of the claim, and certainly no inference adverse to the employer should be drawn from the fact that he preferred to comply with the request rather than litigate it. Furnishing medical attention to

the unfortunate man who had been injured while employed by him was as consistent with a decent and humane impulse to aid him as with an intention to accept the statute, even if acceptance of it after the accident would have had any effect.

Appellants also contend that, since the employer procured the insurance and the insurer notified the commission that it had been issued, they are estopped from asserting that the claim is not valid and enforceable. But there is no ground for the application of the doctrine of estoppel. There is not the slightest evidence that the employee ever knew or heard of the insurance; that it in any way induced him to accept the employment or to take any action or position in reliance upon it which he would not have taken had it not existed. *Herman on Estoppel and Res Judicata*, secs. 7, 763; 21 *C. J.* 1119; *First Nat. Bank of Catonsville v. Carter*, 132 Md. 218, 221, 103 A. 463.

It follows from what has been said that a verdict was properly directed for the defendants, and for that reason, without approving the form of the demurrer prayer, the judgment appealed from will be affirmed.

*Judgment affirmed, with costs.*