**FLORIDA INDUSTRIAL COMMISSION and MIRTIE S. TAYLOR, v. GROWERS EQUIPMENT COMPANY.**

12 So. (2nd) 889            January Term, 1943
March 23, 1943             Division A
Rehearing Denied April 13, 1943

J. *Tom Watson,* Attorney General, *Lewis Petteway,* Assistant Attorney General, *Burnis T. Coleman, John P. Mack* and *S. Sherman Weiss,* for appellants.

*Harry L. Thompson* and *S. Whitehurst's Sons,* for appellee.

CHAPMAN, J.:

The record in this case discloses the following facts: Myrtie S. Taylor was employed from January 1, 1938, until June 6, 1940, by Growers Equipment Company. The employer operated a canning plant and she was employed as a "sectionizer" during the first two quarters of 1940. The Growers Equipment Company employed labor and canned dropped and unmarketable fruit from groves owned by West

Coast Fruit Company and Kilgore Groves, Inc. The majority of the stock of the three corporations was owned, operated and controlled by B. Kilgore. A small quantity of fruit owned by others was canned during the period for their accommodation. The employer, Growers Equipment Company did not own the canning plant or the groves growing or producing the fruit which it canned. The plant worked about one hundred people as packers, peelers and sectionizers of the fruit. Labels at the plant were placed on the cans containing the fruit and juices. During the 1939-1940 canning season 58,732 boxes of citrus fruit were processed by the canning company produced or grown on groves owned and operated by the corporations of B. Kilgore. Likewise 1,147 boxes of fruit from other sources. Growers Equipment Company did not own the building housing the plant or the plant. It simply employed labor to operate the canning plant.

The claimant, Mirtie S. Taylor, on July 19, 1940, filed with the Florida Industrial Commission Unemployed Compensation Division a claim for benefits on the ground that she was at the time unemployed and was as a matter of law entitled to unemployment compensation under the several provisions of Chapters 17270, Acts of 1935; 182402, Acts of 1937; 19637, Acts of 1937; 20685, Acts of 1941; Federal Regulations Sec. 90, Art. 206 (1), or Federal Social Security Act, Section 1607 (L) effective January 1, 1940.

It is the contention of the employer, Growers Equipment Company, that the several Acts, *supra,* under which the claimant seeks unemployment compensation, specifically exempts "agricultural labor" from taxation and that the employment in which the claimant was engaged during the above period was an "agricultural employment" and therefore exempt from taxation under the aforesaid Acts and for this reason she is not legally entitled to unemployment compensation. The Circuit Court of Pinellas County concluded and by a strong opinion held that the claimant during her period of employment was engaged as an agricultural laborer and therefor not entitled to unemployment compensation. An appeal has been perfected therefrom to this Court.

"Agricultural labor" is exempt from taxation. Divisions

(a) and (i) of Subsection VI of Section 3 of Chapter 19637, Acts of 1939, Laws of Florida, are viz:

"VI. The terms 'employment' shall not include (a) Agricultural labor; . . .

" (i) Any employer, employment, or service which is not included within the operation of Title IX of the Federal Social Security Act, or amendment thereto."

"Agricultural labor" was defined by an Act of Congress August 10, 1939, effective January 1, 1940. Title 26 U.S.C.A., Subsection (L) of Section 1607, p. 406, provides:

" (L) Agricultural Labor. The term 'agricultural labor' includes all service performed—

" (1) On a farm, in the employ of any person, in connection with cultivating the soil, or in connection with raising or harvesting any agricultural or horticultural commodity, including the raising, shearing, feeding, caring for, training, and management of livestock, bees, poultry, and fur-bearing animals and wildlife.

" (2) In the employ of the owner or tenant or other operator of a farm, in connection with the operation, management, conservation, improvement, or maintenance of such farm and its tools and equipment, or in salvaging timber or clearing land of brush and others debris left by a hurricane, if the major part of such service is performed on a farm. . . .

" (4) In handling, planting, drying, packing, packaging, processing, freezing, grading, storing, or delivering to storage or to market or to carrier for transportation to market, any agricultural or horticultural commodity; but only if such service is performed as an incident to ordinary farming operations, or, in the case of fruits and vegetables, as an incident to the preparation of such fruits or vegetables for market. The provisions of this paragraph shall not be deemed to be applicable with respect to service performed in connection with commercial canning or commercial freezing or in connection with any agricultural or horticultural commodity after its delivery to a terminal market for distribution for consumption."

The 1941 session of the Florida Legislature adopted the definition of "Agricultural Labor" as set forth in the Con-

gressional Act, *supra*, with enumerated exceptions, and the same became effective July 1, 1941. See Subsection (IX) of Section 3 of Chapter 20685, *et seq.*, Acts of 1941.

Regulation No. 90, defining agricultural labor, adopted by the U. S. Treasury Department under the provisions of Title IX of the Social Security Act, and followed by the Florida Industrial Commission prior to the 1941 Florida Amendment, supra, provides:

"Art. 206 (1). Agricultural Labor.—The term 'agricultural labor' includes all services performed—

"(a) By an employee, on a farm, in connection with the cultivation of soil, the harvesting of crops, or the raising, feeding, or management of live stock, bees, and poultry; or

"(b) By an employee in connection with the processing of articles from materials which were produced on a farm; also the packing, packaging, transportation, or marketing of those materials or articles. Such services do not constitute 'agricultural labor,' however, unless they are performed by an employee of the owner or tenant of the farm on which the materials in their raw or natural state were produced, and unless such processing, packing, packaging, transportation, or marketing is carried on as incident to ordinary farming operations as distinguished from manufacturing or commercial operations.

"As used herein the term 'farm' embraces the farm in the ordinarily accepted sense, and includes stock, dairy, poultry, fruit, and truck farms, plantations, ranches, ranges and orchards.

"Forestry and lumbering are not included within the exceptions."

Presented on this record for adjudication, flowing from the above statement of facts, is the question of whether or not the claimant was engaged in "agricultural labor" within the meaning of the foregoing provisions of law and thereby entitled to unemployment compensation, or was her employment agricultural labor and for this reason her employer was exempt from taxation? In the case of Cassady, Sheriff v.

Hiatt & Lee, 150 Fla. 721, 8 So. (2nd) 661, we held that the several provisions of the Unemployment Compensation Law applied to all laborers not exempted.

The public policy of the State of Florida toward unemployment was declared and made known by Section 1 of Chapter 18402, Acts of 1937, Laws of Florida. It declared that unemployment was a serious menace to the health, welfare and morals of the people of Florida. Involuntary unemployment is of general interest and grave concern to the people of Florida. The public good, the well being of wage earners and the welfare of the State require the enactment of a compulsory Unemployment Insurance Plan, and the setting aside of financial reserves for the benefit of persons without employment through no fault of their own.

The facts involved in this controversy arose prior to the effective date (July 1, 1941) of Subsection IX of Section 3 of Chapter 20685, Acts of 1941, and the provisions thereof are therefore inapplicable to the case at bar. "Agricultural labor" is exempt from taxation under Division (a) Subsection VI of Section 3 of Chapter 19637, Acts of 1937. Division (i) of Subsection VI of Section 3 of Chapter 19637, provides for a further and additional exemption from taxation of "any employer, employment, or service not included within the operation of Title IX of the Federal Social Security Act or amendments thereto. Art. 206 (1), *supra,* was effective when Chapter 19637, *supra,* was enacted by the 1939 Session of the Florida Legislature.

Article 206 (1) *supra,* provides that a farm in the ordinarily accepted sense shall include stock, dairy, poultry, fruit, and truck farms, plantations, ranches, and orchards. Agricultural labor includes all services by an employee on a farm in connection with the cultivation of the soil, the harvesting of crops or the raising, feeding or management of live stock, bees and poultry; or by an employee in connection with the processing of articles or materials which are produced on the farm; also the packing, packaging, transportation or marketing of those materials or articles. Such services do not include agricultural labor, however, unless they are per-

formed by an employee of the owner or tenant of the farm on which the materials in their raw or natural state were produced, and unless such processing, packing, packaging, transportation or marketing is carried on as an incident to the farming operation as distinguished from manufacturing or commercial operation.

The public policy of Florida with reference to unemployment with all of its evils and demoralizing influences and destructive powers referred to in Section 1 of Chapter 18402, Acts of 1937, Laws of Florida, as inimical to the health, progress and welfare of the State and to bulwark or to protect against these destructive evils in behalf of the public good, a financial reserve should be established for the benefit of wage earners. These important findings by the Legislature are "a guide to the interpretation and application" of the several provisions of the Act. The beneficient provisions of the Act should be liberally interpreted and construed so as to alleviate the contaminating influences to the body politic that may accrue because of unemployment of wage earners. See Stein v. Biscayne Kennel Club, Inc., 145 Fla. 306, 199 So. 364; Amos v. Conkling, 99 Fla. 206, 126 So. 283.

The power of taxation flows from the sovereign power of a state. Taxing statutes as a rule are strictly construed. Liability to taxation must be authorized by clear words and expressed intent and if a doubt exists as to the power to tax, it should be resolved in favor of the tax payer. See Lee v. Quincy State Bank, 127 Fla. 765, 173 So. 909. Thus, two rules of construction are controlling as to the statutes and the facts here presented viz: (1) a liberal construction to effect the intent and purpose of the Legislature in the enactment of Chapter 18402, *supra;* (2) a strict construction of the statute as applicable to the tax payer.

The case of United States v. Turner Turpentine Co., was before the Circuit Court of Appeals, Fifth Circuit, reported in 111 Fed. (2nd) 400, and involved the question of agricultural labor. The labor performed was in the production of crude gum from pine trees. The trees were cupped and faces hacked, and the crude gum taken from the cups on the pine trees, and the court held that the labor performed was agri-

cultural labor within the exception now before us. The Court, in part, said (text 111 Fed. [2nd] 404-5) :

". . . It is now a settled principle of statutory construction that Congress or a legislature in legislating with regard to an industry or activity, must be regarded as having had in mind the actual conditions to which the act will apply, that is, the needs and usages of such activity. When then, Congress in passing an Act like the Social Security Act, uses, in laying down a broad general policy of exclusion, a term of as general import as 'agricultural labor,' it must be considered that it used the term in a sense and intended it to have a meaning wide enough and broad enough to cover and embrace agricultural labor of any and every kind, as that term is understood in the various sections of the United States where the act operates. This does not mean of course, that a mere local custom which is in the face of the meaning of a general term used in an Act, may be read into the Act to vary its terms. It does mean, however, that when a word or term intended to have general application in an activity as broad as agriculture, had a wide meaning, it must be interpreted broadly enough to embrace in it all the kinds and forms of agriculture practiced where it operates, that its generality reasonably extends to. Definitions of agriculture in standard texts and treatises and in decisions in these latter years, have had the widest content. Funk & Wagnalls defines agriculture as including horticulture, fruit raising, etc., 'because agriculture is the science that treats of the cultivation of the soil.' Webster's Unabridged Dictionary, 1935, declares that in a broader sense, agriculture includes farms, horticulture, forestry, dairying, sugar making, etc. The Encyclopedia Britannica, 14th Edition, Forestry as a Science, declares: 'the science underlying the growing of timber crops is therefore nothing but a branch of general plant science.' While the Cyclopedia of American Agriculture says of forests. 'If agriculture is the raising of products from the land, then forestry is a part of agriculture.' . . .

"An examination of the cases cited in Words and Phrases, Fifth Series, Vol. 1, p. 339, et seq., under agriculture and in 3 C.J.S., Agriculture, pages 361, 365 and 366, par. 1, under

'agricultural' and 'agriculture,' convinces that in modern usage this is a wide and comprehensive term and that statutes using it without qualification, must be given an equally comprehensive meaning. Among the cases cited, which may be consulted with profit, are Sancho v. Bowie, 1 Cir., 93 Fed. (2nd), 323, holding that in the broad sense agriculture includes farming, horticulture, forestry, sugar making, etc.; Hill v. Georgia Casualty Co., Tex. Com. App. 45 S.W. (2nd) 566, holding that an employee in a pecan nursery, was a 'farm laborer' under the Texas Workmen's Compensation Act, Vernon's Ann. Civ. St. Tex. Art. 8306, par. 2,; Forsythe v. Village of Cooksville, 356 Ill. 289, 190 N.E. 421, holding that 'agriculture' is an indefinite word, including in broad sense, farming, horticulture and forestry, together with such subjects as butter, cheese and sugar making, and words 'agricultural purposes,' having generally been given such comprehensive meaning, unless restricted by context of statute in which used. In re Rodgers, 134 Neb. 832, 279 N.W. 800; the term, 'agriculture' is broader in meaning than farming. Lowe v. North Dakota Workmen's Compensation Bureau, 66 N.D. 246, 264 N.W. 838, 107 A.L.R. 973. 'One may be employed in agriculture and yet not be a 'farmer' in the ordinary sense of the term, nor even a 'farm laborer' as the term is used in our lien laws. They are not synonymous terms. The term 'agriculture' is broader than either of the others.' Ch. Keeney v. Beasman, 169 Md. 582, 182 A. 566, 103 A.L.R. 1515."

It is common knowledge that in the production of citrus, the groves must be plowed, the trees fertilized, sprayed and pruned, pests destroyed, and other numerous activities the performance of which falls easily within the meaning of agricultural labor. The fruit grown must be gathered and transferred to a packing house where it is washed, dried, sorted and packed in boxes according to size and quality and shipped to market, and likewise these several acts in picking the fruit and processing it through the packing house and shipping it to market is accomplished by employees engaged in agricultural labor and the employer cannot be taxed therefor under the aforesaid provisions. Article 206(1) supra

does not impose a tax, it will be observed on the employer from the moment the land is prepared for planting to citrus trees and each step thereafter necessary to grow the tree and produce the fruit. Likewise, the grower is not taxed under the Act when taking the fruit from the groves, running the same .through the packing houses, placing it in boxes and shipping the same because the employers are engaged in agricultural labor.

Subsection (b) of Art. 206(1) defines "agricultural labor" as employment in connection with the processing of articles from materials produced on a farm (grove). Agricultural labor includes the packing, transportation, or marketing of those materials or articles but the acts *supra* provide that when the materials and articles are packed, packaged or transported or marketed it must be "carried on as an incident to ordinary farming operations" as "distinguished from manufacturing or commercial operations." The employment of 100 persons performing labor exclusively in the canning plant and the employment results in canning 58,732 boxes of citrus over the period named, the canning enterprise cannot be considered as incidental to ordinary farming operations," but because of its size, capacity, number of employees, volume of citrus fruit consumed in its operation, causes it to lose its agricultural aspects and thereby assumes the proportions of "commercial operation," not embraced within the definition and meaning of "agricultural labor" incidental to ordinary farming.

The cases cited by counsel in the briefs have been carefully considered. These cases are influenced, more or less, by involved statutes containing some of the provisions of our controlling statutes. We are unable to hold that they are controlling but we find them informative and illuminating and shed some light on the points in controversy. See Chester C. Fosgate & Co. v. United States, 125 Fed. (2nd) 775; Equitable Life Ins. Co. v. Iowa Employment Security Commission, 231 Ia. 889, 2 N.W. (2nd) 262; Cowiche Growers v. Bates, 10 Wash. (2nd) 585, 117 Pac. (2nd) 624; Big Wood Canal Co. v. Unemployment Compensation Division, 61 Idaho 247, 100 Fed. (2nd) 49; Sumatra Tobacco Corp. v. Tone, 127

Conn. 132, 15 Atl. (2nd) 80; Carstens Packing Co. v. Industrial Accident Board, _____ Idaho _____, 123 Pac. (2nd) 1001; Batt v. Unemployment Compensation Division, _____ Idaho _____, 123 Pac. (2nd) 1004; Fromm Brothers, Inc., v. United States, 35 Fed. Supp. 145; North Whittier Heights Citrus Ass'n. National Labor Relations Board, 109 Fed. (2nd) 76.

The judgment of the lower court is hereby reversed for further proceedings therein not inconsistent with this opinion.

It is so ordered.

BUFORD, C. J., TERRELL and ADAMS, JJ., concur.

### ON PETITION FOR REHEARING

BUFORD, C. J.:

On Petition for rehearing it is contended by counsel that by its opinion filed herein on March 23, 1943, the Court has made the *mere size* of the operation the test of the taxability of the enterprise. Inasmuch as counsel for appellee has so construed the opinion, it may be that it would be thus construed by others and we, therefore, think it expedient to clarify the matter in this regard.

The 1941 Session of the Florida Legislature adopted the definition of "agricultural labor" as set forth in the Act of Congress of August 10, 1939, effective January 1, 1940. See sub-section 9 of Section 3, Chapter 20685 et seq., Acts of 1941. The Act of Congress provided:

"(L) Agricultural Labor. The term 'agricultural labor' includes all service performed."

Sub-section 4 provides:

"In handling, planting, drying, packing, packaging, processing, freezing, grading, storing, or delivering to storage or to market or to a carrier for transportation to market, any agricultural or horticultural commodity; but only if such service is performed as an incident to ordinary farming operations, or, in the case of fruits and vegetables as an incident to the preparation of such fruits or vegetables for market. The provisions of this paragraph shall not be deemed to be applicable with respect to service performed

in connection with commercial canning or commercial freezing or in connection with any agricultural or horticultural commodity after its delivery to a terminal market for distribution for consumption."

It will, therefore, be observed that agricultural labor only applies to labor in the processing of fruit when and if such service is performed as an incident to the ordinary farming operations, or in case of fruits and vegetables as an incident to the preparation of such fruits and vegetables for market, and further that the exemption is not applicable "with respect to services performed in connection with commercial canning."

The record in this case shows that Growers Equipment Company was not engaged in growing or producing fruit but was engaged in the processing and canning of fruit and that it performed the service for two or three other corporations which produced the fruit and did some processing for others.

It is contended that because the fruit was produced by corporations which were largely owned and controlled by the same person who in effect owned and controlled Growers Equipment Company that Growers Equipment Company was not engaged in commercial canning. With this contention we are unable to agree. Growers Equipment Company and the several corporations which produced the fruit were just as much separate legal entities as they would have been, so far as the matters here under consideration are concerned, as if the stock in each had been owned and each had been controlled by different individuals.

It was, and is, therefore, our conclusion that Growers Equipment Company was engaged in commercial canning and was not engaged in the packing of its own fruit produced by it. The size of the operation is immaterial. It is the method of the operation which controls. Undoubtedly, under the provisions of the Act here under consideration, if the grower, whether a corporation or an individual, grows and processes its own fruit, then its processing activity does not come within the purview of the Act because it is then an incident to the horticultural operation of the owner, but when several different individuals or corporations, or different individuals

and corporations, produce fruit and deliver that fruit for packing and processing to another individual or corporation which is engaged solely in the enterprise of packing and processing fruit, then the exemption does not apply to the packing and processing operation.

Petition for rehearing denied.

TERRELL, CHAPMAN and ADAMS, JJ., concur.