31 N.J. Super. 553 (1954)
107 A.2d 519
PIONEER POTATO CO., INC., PETITIONER-APPELLANT,
v.
DIVISION OF EMPLOYMENT SECURITY, DEPARTMENT OF LABOR AND INDUSTRY, STATE OF NEW JERSEY, RESPONDENT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued July 12, 1954.
Decided August 17, 1954.
*554 Before Judges HANEMAN, LLOYD and WAESCHE.
Mr. George Warren argued the cause for the petitioner-appellant (Messrs. Warren and Stein, attorneys; Mr. Barclay Malsbury of counsel).
Mr. Herman D. Ringle argued the cause for respondent-respondent.
The opinion of the court was delivered by LLOYD, J.S.C. (temporarily assigned).
This case arises under the "Unemployment Compensation Law," R.S. 43:21-1 et seq. The question presented for determination is: "Did the services of laborers engaged by the appellant for the processing of potatoes in the appellant's plant constitute "agricultural labor" under R.S. 43:21-19(i) (7) (A)?" The Acting Commissioner of Labor and Industry decided that they did not but that the services came under the provisions of R.S. 43:21-19(g) and (i).
Appellant is a domestic corporation engaged in the business of processing and selling potatoes, seed and fertilizers. Processing is described as follows: Potatoes were delivered in 100-lb. field sacks to appellant's plant by farmers, principally *555 its stockholders, and were unloaded, weighed and dumped into the hopper of the grading machine by laborers. Conveyors carried the potatoes in successive steps through a washing unit, a drying unit, over a picking table where defective potatoes were removed, over grading tables, and, finally, to a packing platform where the potatoes were placed in 5-, 10- and 15-lb. bags which were sewn or wired. All services during the process were performed by laborers. The laborers were secured by appellant through agreement with an individual who furnished, during the season, 40 to 50 laborers needed to process the potatoes at appellant's plant. Both he and the laborers were migrants, travelling with the seasons and performing services for which they were trained. The individual was paid a salary for which he supervised the work of the laborers and carried out the orders given to him. At the end of each week he received from appellant an additional sum representing the amount earned by the laborers, whom he paid. The appellant sold all its potatoes for itself, in its name, and for prices and on terms suitable to it. The price paid the farmers could fluctuate from week to week. The difference between the sales price and the amounts received by the farmers represented the company's profit on potato sales.
Appellant claims that these laborers were subject to the exception R.S. 43:21-19(i)(7)(A). Under this statute: (i) "employment" means service including services in interstate commerce performed for remuneration or under any contract of hire, written or oral, express or implied. (7) provides the term "employment" shall not include (A) agricultural labor.
Were these laborers in the category of "agricultural labor?" If so, they do not come under the term "employment." "Agricultural labor" is a broad term and includes farming in all of its incidents: gardening, horticulture, viticulture, dairying, poultry, bee raising and ranching. It refers to the field or farm with all its wants, appointments and products, as horticulture refers to the garden with less important, though varied, products.
*556 Potatoes to be marketable must be processed. This, the appellant did by these migratory workers and machines. It must be said that appellant's business falls into two categories  (1) agricultural, and (2) commercial. It would seem that the line can be drawn when the potatoes are marketable.
"Marketable" is defined as: salable, merchantable, wanted by purchasers, fit for market. The work performed by these laborers was to prepare the potatoes for market or for a terminal market.
"Terminal Market" is a place of business to which products are shipped in a sorted, graded, packaged condition, ready for immediate sale. It cannot be said that the potatoes upon being delivered to appellant's place of business are marketable and it is not until the laborers have completed their tasks that they are. From that stage, it would be said, so far as appellant is concerned, that it was a "terminal market."
In the case of Henry A. Dreer, Inc., v. U.C.C. of N.J., 127 N.J.L. 149 (Sup. Ct. 1941), it was held:
"The statute being remedial, should of course be liberally construed as to its purview. But the controlling proviso excluding `agricultural labor' is broad and sweeping, and should not be whittled down by narrowness of construction.
"* * * that where the business of employer is agricultural * * * and the work of the employee is germane and incidental to that business, the proviso is applicable and the employee disentitled."
This view seems to be adequately supported by such cases in other jurisdictions as Keeney v. Beasman, 169 Md. 582, 182 A. 566, 103 A.L.R. 1515; American, &c. Corp. v. Tone, 127 Conn. 132, 15 A.2d 80; Miller & Lux, Inc., v. Ind. Acc. Comm., 179 Cal. 764, 178 P. 960, 7 A.L.R. 1291, and Davis v. Industrial Comm., 59 Utah 607, 206 P. 267.
The laborers here, working on the conveyors, washing unit, drying unit, picking out defective potatoes, grading and packing them, were engaged in their preparation for market. Such being the case, it would seem that it could *557 not be denied that they were engaged in "agricultural labor" as contemplated by the statute.
Take the case of an individual or corporation, and there are many within this State, which own large acreage, plant and raise vegetables, fruits, etc., then process, can, freeze, convert, or ship to market. Because corporations or individuals such as these are partially industrial or commercial, it cannot be said that they have no agricultural workers. They definitely do. However, at some point "agricultural labor" ceases and commercial labor begins. The dividing line is a fine one, but we incline to the view that that point is reached when the fruit or vegetables are ready either for market, or for conversion into soups, hash, etc., or treatment such as canning, or freezing, and the employees up to this point are engaged in "agricultural labor." Beyond that point they become commercial. There is no distinction between the appellant and this type of individual or corporation. Every case, however, will probably have its own peculiar facts.
We conclude, therefore, that the services performed by the laborers aforementioned constituted employment for the appellant under the provisions of 19(i) (7) (A), and the decision of the Acting Commissioner of Labor and Industry is set aside.