**GENERAL ELECTRIC COMPANY**

v.

**UNITED STATES of America, et al.**

**Civ. A. No. M-84-3834.**

United States District Court,
D. Maryland.

Feb. 21, 1985.

---

Edward C. Mackie, Patrick G. Cullen, and Rollins, Smalkin, Richards & Mackie, Baltimore, Md., for plaintiff.

Richard K. Willard, Acting Asst. Atty. Gen., John J. Farley, III, Director, Civ. Div., Torts Branch, John Lodge Euler, Asst. Director, Civ. Div., Torts Branch, Richard Tolles and Timothy P. Garren, Attys., Torts Branch, Dept. of Justice, Washington, D.C., and J. Frederick Motz, U.S. Atty., D. Md., Baltimore, Md., for defendants.

## MEMORANDUM AND ORDER

JAMES R. MILLER, Jr., District Judge.

General Electric Company filed the instant action against the United States, pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 2671–2680, alleging jurisdiction under 28 U.S.C. § 1346(b), and against five federal employees individually for negligence, alleging diversity jurisdiction (Paper No. 1). All defendants have moved to dismiss the complaint in its entirety (Paper Nos. 5 & 8), and the plaintiff has responded (Paper Nos. 7 & 9). No hearing is necessary to decide the issues herein. Local Rule 6E.

### Factual Background

On July 27, 1982, Mr. James Layman and Mr. Lloyd Thompson, employed by the National Institute of Health (NIH) as electricians, were sent to Building 29 at NIH to

replace burned out resistors in a transformer designed and manufactured by General Electric (Paper No. 1, ¶¶ 10–11). While Layman and Thompson were working on the transformer, a short circuit occurred causing a surge of electric current accompanied by an arc which enveloped Thompson and Layman seriously injuring both of them (*id.* ¶¶ 12–14). Mr. Thompson died within one month of his injury. Mr. Layman remains alive but permanently injured and disfigured (*id.* ¶¶ 13–14).

A civil action against General Electric was filed in this court by Mr. Thompson's representative and by Mr. Layman and his wife to recover for the injuries sustained by both men. *See Thompson, et al. v. General Electric Co.*, No. M–83–1293. General Electric settled the claims of the plaintiffs in that action (Paper No. 1, ¶ 23).

In the present action, General Electric seeks contribution and indemnity from the United States and the five individual defendants. As to the United States, General Electric alleges that the United States, as the employer of Layman and Thompson, breached its duty to provide a safe work place for them (*id.* ¶ 17). Against the five federal employees, General Electric alleges that while acting in the scope of their employment, they failed to carry out their duties to use reasonable care for the safety of their fellow employees, specifically Mr. Layman and Mr. Thompson (*id.* ¶¶ 19–20).

The alleged breaches of duty on the part of both the United States and the five individual defendants are detailed in the complaint as:

"a. Failure to provide and require the use of adequate protective clothing, including protective gloves, by personnel working with high voltage electrical equipment.

b. Failure to require that high voltage electrical equipment be de-energized when work was done on equipment which could be de-energized without interrupting service to the facility.

c. Failure to require that the two components of the fuse assembly each be removed separately from the network protector.

d. Failure to take measures to inspect and examine high voltage electrical equipment for possible modifications to make it safer for use.

e. Failure to instruct adequately personnel respecting (i) the hazards of working with or coming into contact with high voltage electrical equipment, (ii) the means of avoiding injury from such hazards, (iii) the use of the load side switch to de-energize the equipment, (iv) the safer method for installing fuse bars, (v) the construction of the network protector and (vi) the use of one hand rather than two as the safer technique for electricians to use.

f. Failure to implement and require personnel working with or coming into contact with high voltage electrical equipment to adhere to prescribed safety standards and regulations.

g. Failure to take other reasonable and necessary precautions against injury to personnel employed in working with or coming into contact with high voltage electrical equipment."

(*Id.* ¶¶ 18 and 20).

## Legal Analysis

A) *Is the United States Immune from this Suit under Maryland Workmen's Compensation Law?*

The Federal Tort Claims Act, 28 U.S.C. § 2671 *et seq.*, is a limited waiver of the United States' sovereign immunity to suits in tort. *See United States v. Orleans*, 425 U.S. 807, 813, 96 S.Ct. 1971, 1975, 48 L.Ed.2d 390 (1976). Pursuant to 28 U.S.C. § 1346, federal courts have exclusive jurisdiction for claims for money damages for negligence of employees of the United States, acting within the scope of their employment, "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b); *see also* 28 U.S.C. § 2674.

■ Since the negligent acts or omissions alleged herein occurred in Maryland, Maryland law governs the United States' liability in this case. *See, e.g., Richards v. United States*, 369 U.S. 1, 8–9, 82 S.Ct. 585, 590, 7 L.Ed.2d 492 (1962); *Garrett v. Jeffcoat*, 483 F.2d 590, 592 (4th Cir.). The United States "... stands in the shoes of a private person in like circumstances ..." for the purposes of liability. *Hunt v. United States*, 636 F.2d 580, 585 (D.C.Cir.1980); *see also United States v. Muniz*, 374 U.S. 150, 153, 83 S.Ct. 1850, 1853, 10 L.Ed.2d 805 (1963). If Maryland statutes immunize a private employer in like circumstances from suit, the United States is likewise shielded from liability in this action.

■ Under the Maryland Workmen's Compensation Act, "[e]very employer subject to the provisions of this article shall pay or provide ... compensation according to the schedules of this article for disability or death of his employee arising out of ... his employment...." *Md.Ann.Code*, Art. 101 § 15. If the employer secures compensation to his employees as set forth in § 16 of the Article 101,[1] his liability under the workmen's compensation laws "shall be exclusive...." *Md.Code Ann.*, Art. 101 § 15. Thus, "the Workmen's Compensation Act is a substitute for the employer's common law liability for negligence." *Flood v. Merchants Insurance Co.*, 230 Md. 373, 377, 187 A.2d 320 (1963); *see also Knoche v. Cox*, 282 Md. 447, 452–53, 385 A.2d 1179 (1978); *Baltimore Transit Co. v. State to Use of Schriefer*, 183 Md. 674, 677, 39 A.2d 858 (1944).

The exclusivity provision of Maryland law precludes liability of the employer for contribution, *see Mason v. Callas Contractors, Inc.*, 494 F.Supp. 782, 784 (D.Md.1980) *citing Baltimore Transit Co. v. State*, 183 Md. 674, 39 A.2d 858 (1944) or indemnity, *see American Radiator Corp. v. Mark Co.*, 230 Md. 584, 588–90, 187 A.2d 864 (1963).

The plaintiff argues, however, that the Maryland statute excludes some employers from its provisions and that those employers cannot take advantage of the exclusivity provisions of the statute even if they provide workmen's compensation to their injured employees.

Under the statute, "[t]he following shall constitute employers subject to the provisions of this Act: (1) Every person that has in the State one or more employees subject to this Act." *Md.Code Ann.*, Art. 101 § 21(a)(1). Seven classes of employees are exempted from coverage under the Act. *Md.Code Ann.*, Art. 101 § 21(c)(1–7). One of the groups exempted is "[a]ny person for whom a rule of liability for injury or death is provided by the laws of the United States." *Md.Ann.Code*, Art. 101 § 21(c)(3). Obviously, then the United States does not have employees subject to the Act. The plaintiff argues that, as a result, the United States is not an employer subject to the Act and is, therefore, not immune from suit herein.

The plaintiff relies on *Keeney v. Beasman*, 169 Md. 582, 182 A. 566 (1936), to support its assertion that if an employee is exempted from the Act, even the employer's unilateral purchase of Workmen's Compensation insurance will not subject the employer to the Act and its protection.[2]

---

1. The employer shall secure compensation to his employees in one of the following ways:
   (1) By insuring and keeping insured the payments of such compensation in the State Accident Fund, or
   (2) By insuring and keeping insured the payments of such compensation with any stock corporation or mutual association authorized to transact the business of workmen's compensation insurance in this State.

2. In *Keeney v. Beasman*, the employee was injured and subsequently died from those injuries. His widow submitted a claim to the State Industrial Accident Commission. 169 Md. at 584. His employer had purchased an insurance policy from Maryland Casualty Co. under which the insurer agreed to pay promptly any person entitled to payment under the Workmen's Compensation Law. *Id.* 169 Md. at 589, 182 A. 566.

   The issue before the court was whether the decedent, a dairy farm laborer, was entitled to payment. The court decided that because farm laborers were excluded from the statute, the decedent was not engaged in work covered by the statute, and that the employer and his insurer could raise that fact as a defense to payment

Not cited by the plaintiff, but also relevant to the issue, is *Congressional Country Club, Inc. v. Baltimore & Ohio Railroad Co.*, 194 Md. 533, 71 A.2d 696 (1950). In that case, two employees of the Congressional Country Club [hereinafter the Club] were injured and one was killed when a bus owned by the Club and transporting them to work, collided with a train. *Id.* at 539, 71 A.2d 696. The injured passenger and the personal representatives of the deceased passengers filed suits against the Railroad. The Railroad notified the Club of the pendency of the suits and requested its participation in settlement. The Club declined to participate. The Railroad settled the claims and thereafter sued the Club for indemnity and contribution.

The Club defended on the basis that it was a conforming employer under the Workmen's Compensation Act and that its liability under the Act was exclusive. Whether the Club was entitled to that defense depended on whether the employees were covered by the Act. *Id.* at 541, 71 A.2d 696.

Because the Act extended liability to an employer, in this case, on the basis of extra-hazardous employment, the Club would have been liable to the employees for workmen's compensation under the Act only if their employment was found to be extra-hazardous. *Id.* The court found that the employees were not engaged in extra-hazardous work, and, therefore, the Club was not liable to them for workmen's compensation under the Act. *Id.* at 542–43, 71 A.2d 696. The Club could have elected to insure employees in non-extra-hazardous work and thus become liable to them under the Act, but it chose not to do so. *Id.* at 544, 71 A.2d 696. Therefore, the Club was estopped from raising the defense of exclusivity in the suit brought by the Railroad for contribution and indemnity. *Id.* at 543,

71 A.2d 696. The trial court's award to the Railroad against the Club was accordingly affirmed. *Id.* at 545, 71 A.2d 696.

On the surface, *Keeney* and *Congressional Club* appear dispositive of the issue herein. In both cases the court looked to whether employees involved were exempted from the Act. In *Congressional Club*, the court found that because the employees were not covered by the Act, the employer could not shield itself behind the Act to preclude liability to a third party for contribution and indemnity. The critical fact in *Congressional Club*, however, was the fact that the employer, under the Act, could have insured the injured employees, *i.e.*, employees not engaged in extra-hazardous employment, by the joint election procedure set out in the Act, but the employer did not so do. Thus, it was held reasonable that that employer should not benefit from the protection of exclusivity in the Act.

The case at bar presents a different kind of problem. The United States has provided to its employees, through the Federal Employment Compensation Act, 5 U.S.C. § 8101, *et seq.*, a system whereby federal employees in Maryland may be compensated for their injuries. Those Maryland employees need not look to the Maryland Workmen's Compensation Act for coverage or compensation. Indeed, it appears that a state legislature "is without power to compel the federal government to participate in a state workmen's compensation program." *See Giannuzzi v. Doninger Metal Products*, 585 F.Supp. 1306, 1306 (W.D.Pa.1984).

Thus, the plaintiff is arguing that, because the federal government did not make payments to the Maryland Workmen's Compensation system, but chose instead to provide coverage to its employees through a federal compensation system, it cannot be

---

under the insurance policy. *Id.* at 589, 595, 182 A. 566.

Exempted employees could only be included under the statute, at that time, if there was a joint election by the employer and employee to be included and if the Industrial Accident Commission approved that joint election. *Id.* at 591, 182 A. 566. Those conditions had not been met

in *Keeney*, and, therefore, his widow had no recourse under the statute.

After the decision in *Keeney*, the statute was amended to preclude the defense that an employee was not covered by the Act if the insurer had accepted payments on the workmen's compensation insurance policy. *Md.Code Ann.*, Art. 101 § 65.

shielded from liability under the Maryland Workmen's Compensation Act. That argument relies on too technical a reading of the definition of employer in the Maryland Act.

In two recent decisions on this issue federal courts have considered, but have not found dispositive, the fact that federal employees are exempt from coverage in state workmen's compensation acts. In *Giannuzzi v. Doninger Metal Products, supra* at 1310, the court stated:

"Congress enacted the Federal Employees Compensation Act to assist the federal government achieve its goal of becoming a 'model employer.' *See* S.Rep. No. 1081, 93rd Cong., 1st Sess., *reprinted in* (1974) U.S.Code Cong. & Ad.News 5341. In a realistic sense, the Act is the government's 'answer to Workman's Compensation, ... first enacted in Pennsylvania three years prior to the passage of the F.E.C.A.' *Lorenzetti v. United States,* 710 F.2d 982, 985 (3d Cir.1983). That the federal program rather than the state program paid benefits to plaintiff is not significant. Because Pennsylvania law requires private employers to pay premiums to the workmen's compensation fund and because federal law requires the United States to be a private employer in tort case, it can be assumed for litigation purposes that the requirement of a 'quid pro quo' has been satisfied. We hold the fact that the federal government did not make payments to the Pennsylvania workmen's compensation fund does not affect the bar of state law in a tort suit against the United States as an employer."

Similarly, in *In re All Asbestos Cases,* 603 F.Supp. 599 (D.Hawaii 1984) (Paper No. 5, Ex. 1), the court stated:

**3.** The statute reads:

"An employee and his employer who are not residents of this State and whose contract of hire is entered into in another state shall be exempted from the provisions of this article while such employee is temporarily or intermittently within this State doing work for such nonresident employer, if such employer has furnished workmen's compensation insurance coverage under the workmen's compensation or

"The FTCA provides that that the United States will only be liable as if a 'private person.' Therefore, provisions of workers' compensation statutes, such as § 903(a)(2) of the LHWCA, which exclude coverage of federal employees, are inapplicable in the analysis. Further, inviting this Court to analogize to a private party not covered by workers' compensation laws applicable to private parties would be to ask the Court to apply the principles of indemnity and contribution in a vacuum of substantive law. This is both infeasible and contrary to the intent of Congress in enacting the FTCA to determine liability in accordance with the law of the place where the act or omission occurred." *Id.,* at 603.

The Maryland Workmen's Compensation Act "should not be defeated by technical construction," *see Slacum v. Jolley,* 153 Md. 343, 138 A. 244, *passim* (1927), but should receive practical construction, *see, e.g., Rumple v. Henry H. Meyer Co., Inc.,* 208 Md. 350, 360, 118 A.2d 486 (1955).

In all practical ways, the law of Maryland envisions that a private person who conforms to the Act by obtaining workmen's compensation insurance to cover his employees injured on the job shall be shielded from common law liability to the employee and liability to third parties on indemnity and contribution claims. In fact, private employers from outside the state are provided with the shield of immunity, in certain circumstances, if the out-of-state workman's compensation scheme covers the non-resident employee injured while on the job in Maryland.[3] *Md.Code Ann.,* Art. 101 § 21(c)(4).

In *Kelly v. Eclipse Motor Line,* 305 F.Supp. 191 (D.Md.1969), Judge Kaufman

similar laws of such other state, so as to cover such employee's employment while in this State; provided the extraterritorial provisions of this article are recognized in such other state and provided employers and employees who are covered in this State are likewise exempted from the application of the workmen's compensation or similar laws of such other state. The benefits under the workmen's compensation act or similar laws of such other state shall be the

decided that even though the Pennsylvania Workman's Compensation statute did not extend reciprocal extra territorial effect to the Maryland compensation law, the out-of-state employee who obtained compensation from his Pennsylvania employer in the Pennsylvania system could not sue that same employer in Maryland for negligence. *Id.* at 197–205. The Pennsylvania compensation award was the employee's exclusive remedy. *Id.* at 205.

It would be anomalous to allow out-of-state private employers to raise the bar of exclusivity and yet to deny that right to the federal government. Employees of both are exempt from the Act. If exclusivity applies to one, it logically should apply to the other.

It follows that the United States stands in the shoes of those private persons shielded by the Maryland Workmen's Compensation Act from direct actions and third party actions for contribution and indemnity. The motion to dismiss of the United States will be granted.

### B) *Are the Individual Defendants Absolutely Immune from Suit?*

The five individual defendants herein argue that they are absolutely immune from suit.

■ If the alleged tortious acts of federal employees were within the "outer perimeter of [their] line of duty" and were "an appropriate exercise of the discretion which an officer of [their] rank must possess if the public service is to function effectively," the employees are absolutely immune from common law tort liability. *Barr v. Matteo*, 360 U.S. 564, 575, 79 S.Ct. 1335, 1341, 3 L.Ed.2d 1434 (1958); *see also, Butz*

*v. Economou*, 438 U.S. 478, 488, 98 S.Ct. 2894, 2901, 57 L.Ed.2d 895 (1978).

The Fourth Circuit has "read *Barr* to extend absolute immunity to lower as well as upper level federal officials exercising discretion." *George v. Kay*, 632 F.2d 1103, 1105 (4th Cir.1980). For federal employees, "[t]herefore, wrongful activity incidental to an otherwise proper exercise of authority must fall within the immunity claim." *Wallen v. Domm*, 700 F.2d 124, 126 (4th Cir.1983).

■ Based on the allegations in the complaint, there is no dispute that these employees were acting within the outer perimeter of their lines of duty, but the plaintiff contends that the employees herein were not exercising discretionary duties, but solely ministerial ones.

A decision on whether the acts or omissions herein were an appropriate exercise of discretion requires a review of the duties of the five individual defendants.[4] There are no allegations in the complaint regarding those duties. Therefore, disposition of this issue on a motion to dismiss would be inappropriate.

Accordingly, it is this 21st day of February, 1985, by the United States District Court for the District of Maryland, ORDERED:

1) That the motion to dismiss of the United States is GRANTED.

2) That the motion to dismiss of the individual defendants is DENIED.

---

exclusive remedy against such employer for any injury, whether resulting in death or not, received by such employee while working for such employer in this State."
*Md.Code Ann.*, Art. 101 § 21(c)(4).

**4.** If in fact the acts or omissions alleged herein were performed by the five individual defend-

ants as discretionary functions, the United States would not be liable to the plaintiff in this action. Under 28 U.S.C. § 2860(a) the provisions of the FTCA and 28 U.S.C. § 1346(b) are not applicable to "any claim ... based upon the exercise or performance or failure to ... perform a discretionary function...."