260 P.2d 718

**GARRISON v. BONFIELD et al.**

**No. 5603.**

Supreme Court of New Mexico.

Aug. 25, 1953.

534

Neal & Girand, L. George Schubert, Hobbs, for appellant.

Ray C. Cowan, Hobbs, for appellees.

McGHEE, Justice.

The appellant filed claim for workmen's compensation in statutory form for an injury claimed to have been received while working for Bonfield in a retail lumber yard at Hobbs, New Mexico.

The answer denied the claimant suffered an injury arising out of and in the course of his employment while working for the employer, denied claimant suffered any disability, and pleaded by way of new matter:

"1. They deny that the Defendant Joe Bonfield was at the time of the injury complained of engaged in one of the extra hazardous occupations or pursuits set forth in the Workmen's Compensation Act of New Mexico, and allege that he was not at such time engaged in any extra hazardous occupation or pursuit as is described in such Act.

"2. They allege that the Defendant Joe Bonfield had not, prior to the date of such injury asserted by Claimant, filed a written statement in the office of the Clerk of the District Court for Lea County, New Mexico, this being the county in which he was engaged in doing business, in which he elected to be subject to the Workmen's Compensation Act; allege that prior to such injury such Defendant had not filed any written statement in the office of the Clerk to the effect that he accepted the

provisions of the Workmen's Compensation Act."

When the case came on for hearing on July 9, 1953, the parties entered into the following stipulation:

"It is hereby agreed and stipulated between the parties to this action that the following facts will be taken as true, in order that it be determined whether or not any injuries suffered by Plaintiff are within the purview of the Workmen's Compensation Act:

. "1. The facts set out in the statement of Joe M. Bonfield, dated March 24, 1952 and attached hereto.

"2. That the alleged injury to the Plaintiff did not occur while he was at work or due to his having been at work upon any structure ten feet or more above the surface of the ground.

"3. That such employer had not, prior to the date of such alleged injury, filed in the office of the Clerk of the District Court for Lea County a written statement to the effect that he accepted the provisions of the Workmen's Compensation Act."

The statement referred to in the stipulation reads as follows:

"My name is Joe M. Bonfield. I am 34 years of age, white, American, married and live at 1020 Lincoln Road, Hobbs, New Mexico. I am sole owner of Bonfield Lumber & Supply. I op- erate a retail lumber and builders supply business under the above name at 109 North Dal Paso Street, Hobbs, New Mexico. I first opened my business about June, 1950, and have been operating at the aforesaid address continuously since that date. Prior to opening my own business under the above name, I was a partner in Builders Supply, Hobbs, New Mexico, and while in said partnership we had a man in our employ by the name of E. J. Garrison. When I severed my partnership and opened my own business, E. J. Garrison left Builders Supply and went to work for me, individually. He worked continuously for me, individually, from June, 1950 up until October 13, 1951. Mr. Garrison was employed by me on a rather general basis. He made estimates for customers, made yard sales, kept the yard in order, supervised incoming and outgoing merchandise, did some collection work, and in general did whatever might be required of him. I paid Mr. Garrison a weekly salary of $75.00 per week plus 5% of the net profits of the business. I was not at my yard on Saturday, October 13, and I returned to the yard on Monday or Tuesday the following week. At that time, on Monday or Tuesday, October 15 or 16, 1951, I was informed that E. J. Garrison had a stroke while at the yard on the previous

Saturday, October 13, 1951. The only thing I know in regard to his stroke is what was told me by the other employees who were working with him and what was told me by Mr. Garrison at a later date. No one told me that Mr. Garrison had an accident in the commonly accepted sense of the word, nor did Mr. Garrison at any later date tell me that he had an accident. At the time I was informed of Mr. Garrison's stroke I thought it was probably necessary to make a report to my compensation insurance carrier, but not being certain of this I instructed my Manager, Mr. O. B. Harton, to look into the matter to see if a report should be made. Almost immediately thereafter I made several extended trips out of town, and this caused a delay in a report finally being made to the company.

"I paid Mr. Garrison his regular salary through December, 1951. In January I paid him on the basis of $250 per month and starting February 1, 1952 I have been paying him $100 per month, which is strictly a donation on my part.

"As stated above I am engaged in retail lumber and builders supply business, I mean by this that I buy lumber and building supplies wholesale and sell the same to building contractors or the public in general. I do not engage in the manufacture of lumber nor do I operate a saw mill, planing mill or any similar lumber preparation plants. I buy the lumber and materials ready prepared and sell them in the condition which they are received. I do no building or construction work. I have no contractors license. I do not own or operate any rip-saws, planes, or any other machinery. I do not employ any carpenters. I do not accept any contracts for rebuilding, remodeling or building buildings. I employ an estimator to assist contractors who work out of my yard, but this man is employed solely to assist the contractors. I have five full time employees and two part time employees.

"I have read the above and foregoing statement and the same is true and correct to the best of my knowledge and belief.

"/s/ Joe M. Bonfield."

On the same date they also entered into the following oral stipulation in open court:

"It is mutally stipulated between the parties hereto for the purpose of the Motion that if the plaintiff E. J. Garrison were present he would testify that he formerly worked for Builders Supply, a lumber yard at Hobbs, New Mexico, with Joe M. Bonfield, the Employer, who was a partner; that Mr. Bonfield severed his connection with Builders Supply and formed his

own company and took E. J. Garrison, an employee, with him into his little business; that Mr. Bonfield then informed E. J. Garrison that he was going to buy Workmen's Compensation policy and that Mr. Bonfield did buy a policy of Workmen's Compensation Insurance from the firm of Denson-Wycoff Insurance Agency of Hobbs, New Mexico; that when Mr. Bonfield returned from purchasing this policy he informed the plaintiff that he had procured workmen's compensation insurance so that all of his employees would be covered by the features of the workmen's compensation insurance policy; that Mr. Bonfield would testify if present substantially to the above facts. This is in addition to the written stipulation wherein a statement is attached by Mr. Bonfield. The policy was not filed with the District Court Clerk, that Mr. Bonfield would testify that as far as he knew he had done all acts required on his part to comply with the Workmen's Compensation Statutes of the State of New Mexico, that he intended to be covered by the Workmen's Compensation Law."

Whereupon, one of the attorneys for the defendants made the following motion:

"If it please the Court, in view of the stipulation filed and dictated into the record here the Defendants move the claim for compensation be dismissed for the reason that the same does not state a claim upon which relief can be based."

The motion was sustained and judgment of dismissal was entered. This appeal followed.

The claimant makes two points in support of his attempt to secure a reversal. First, the employer and his insurer are estopped from asserting as a defense the failure of the employer to file in the office of the Clerk of the District Court the bond and his election to be bound by the Compensation Act, Section 57–901 et seq., 1941 Compilation, in the operation of his nonhazardous business; and, second, the operation of a retail lumber business is an extrahazardous occupation under the terms of our Workmen's Compensation Act.

We will first consider the matters urged under point one.

Section 57–904, 1941 Compilation, provides that an employer engaged in other than an extrahazardous occupation may bring himself and his employees under the terms of the Workmen's Compensation Act by filing a written statement of his election, and a policy of insurance by some company qualified to do business in this state covering claims arising under the act.

The appellees strongly rely upon our decision in Eaves v. Contract Trucking Co., 1951, 55 N.M. 463, 235 P.2d 530, where

we squarely held the failure of the employer in a nonhazardous occupation to file the written election in the office of the Clerk of the District Court rendered the employer and his insurer immune to action under the act, although the bond was actually filed, basing the decision upon the wording of the act and the case of Keeney v. Beasman, 1936, 169 Md. 582, 182 A. 566, 103 A.L.R. 1515, and making reference to the case of Lester v. Auto Haulaway Co., 1932, 260 Mich. 16, 244 N.W. 213. A majority, including the writer, believe the holding in the Eaves case was too strict and that the decision should have gone the other way in accordance with the rationale of Yeomans v. Anheuser-Busch, Inc., 1941, 198 S.C. 65, 15 S.E.2d 833, 136 A.L.R. 894, where it was held the filing by the insurer of notice of the policy brought the employees under the protection of the South Carolina Workmen's Compensation Act, although the statute also required the filing of notice by the employer. See also L. E. Marks Co. v. Moore, 1933, 251 Ky. 63, 64 S.W.2d 426.

We now pass to a consideration of the question of estoppel.

In Keeney v. Beasman, supra, the claimant was a laborer on a dairy farm and did not know his employer had taken out a workmen's compensation policy covering the workmen on the farm, and that the insurance carrier had notified the state industrial accident commission of the issuance of the policy, as provided by law. It was held the claimant was not engaged in an extrahazardous occupation, as defined by the act, and such being the case he could only be brought within its terms if three conditions concurred: (1) That the employer and employee jointly elect to accept the statute; (2) that the joint election be filed with the commission; and (3) that the commission approve their acceptance. None of these conditions occurred, and the court held the claimant could not recover under the Maryland Workmen's Compensation Act.

Estoppel was raised by the claimant in the Maryland case, and of this the court said [169 Md. 582, 182 A. 572]:

"Appellants also contend that, since the employer procured the insurance and the insurer notified the commission that it had been issued, they are estopped from asserting that the claim is not valid and enforceable. But there is no ground for the application of the doctrine of estoppel. There is not the slightest evidence that the employee ever knew or heard of the insurance; that it in any way induced him to accept the employment or to take any action or position in reliance upon it which he would not have taken had it not existed. * * *" (Citing authorities.)

From what has just been quoted we assume if estoppel had been present a different result would have been reached.

Here the employer informed the employee when he opened the new business he would buy a workmen's compensation policy, and did so; he informed the workman of such fact, who apparently acquiesced and continued at his work secure, no doubt, in his belief he would be protected in case he suffered an accidental injury, and the employer shared such belief. The insurance company has collected the premium and agreed to pay the losses, if any, and instead of advising its customer where the policy should be filed, as well as the necessity for filing a notice, it would keep the premium and avoid liability, as the employer states he did not know it was necessary to do more than purchase the policy.

By giving the stipulations and the statement of Bonfield a liberal construction, as we should do under the Workmen's Compensation Act, we believe the question of estoppel against the employer and insurer was sufficiently raised, and that such question should be determined by the fact finder, along with the claim of injury and the amount, if any, which may be recoverable.

It may be well to here state the Legislature has cured our error in the Eaves case by the enactment of Ch. 87, Laws of 1953, providing that the filing by the employer of a statement he elected to be bound by the Workmen's Compensation Act, or the filing of a bond was a sufficient election by the employer to be bound by the act.

Under his second point the appellant would have us hold a retail lumber yard where no work of any kind is done on the lumber except to stack it when received and load it out when sold, comes within the definition of a mill under the wording in Section 57-912, 1941 Compilation, as follows:

"(c) 'Mill' means any plant, premises, room or place where machinery is used, any process of machinery, changing, altering, or repairing any article or commodity for sale or otherwise, together with the yards and premises which are part of the plant, including elevators, warehouses and bunkers, saw mill, sash factory or other work in the lumber industry."

He pins his hopes on the words "or other work in the lumber industry." Undoubtedly this refers back to the wording of the first part of the quoted matter where machinery is used, or material is changed, altered or repaired, and not the activities as detailed in the statement of Bonfield and the record before us.

It is easy to see the trial court was controlled by our holding in the Eaves case, supra, which we have overruled in this opinion.

The judgment of dismissal will be reversed and the cause remanded with instructions to set aside the judgment and proceed with the views herein announced, and it is so ordered.

COMPTON, LUJAN and SEYMOUR, JJ., concur.

SADLER, C. J., absent from state and not participating.