238 A.2d 53.

GERARD HORTON *vs.* FOSTER-GLOCESTER REGIONAL SCHOOL DISTRICT.

FEBRUARY 8, 1968.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

JOSLIN, J. This is an employee's original petition for compensation. A trial commissioner found that a compensable injury sustained on September 15, 1965 resulted in the petitioner's total incapacity for work from February 24, 1966 to September 6, 1966. He ordered that compensation be paid for the period of the disability and in addition directed the respondent to pay the petitioner's reasonable medical expenses as well as fees for his counsel and for the expert witnesses who testified on his behalf. On appeal the full commission affirmed, and the case is now here on the respondent's appeal from its decree.

The petitioner will hereinafter be referred to by that designation; the respondent, the Foster-Glocester Regional School District, as the "School District"; the Foster-Glocester Regional District School Building Committee, as the "Building Committee"; the Foster-Glocester Regional District School Committee, as the "School Committee"; and the American Employer's Insurance Company, respondent's insurer under the workmen's compensation act, as the "Carrier." The School District, in addition to being defended generally by the Carrier, appeared specially; no appearance was made for the Building Committee.

The facts are not in dispute. The petitioner, responding to an advertisement inserted in the local press by the Building Committee, was interviewed by its chairman and then entered into an employment agreement to serve as clerk-of-the-works in connection with the construction of a new Foster-Glocester regional high school. Shortly after entering upon his duties, he slipped in a puddle of wet concrete and injured his back and left leg. A single commis-

sioner found and the full commission affirmed that the injuries thus sustained "* * * lighted up and/or aggravated a pre-existing multiple myeloma condition" and that petitioner's total incapacity for work resulted therefrom.

Although the School District attacks the commission's finding that the injuries sustained when he slipped caused the progressive myeloma, there is competent medical evidence "* * * that the alleged injury precipitated the progression and exacerbation of the unsuspected disease * * *" and that the resulting disability was, without question, caused by that aggravation. There being such record evidence, we are precluded, absent fraud, from interfering with the commission's factual determination of the cause of the disability. *Kaiser Aluminum & Chemical Corp.* v. *Oliveira,* 101 R. I. 487, 224 A.2d 903; *Hebblewaite* v. *Powers,* 101 R. I. 347, 223 A.2d 442.

The real issue, however, is legal, not factual. Was petitioner in the employ of the School District at the time he sustained his incapacitating injury? The petitioner says he was; the Carrier on behalf of the School District disavows that employment and claims that petitioner was in the Building Committee's employ. Their disagreement arises from the differing meanings they give to P. L. 1958, chap. 109. That act establishes a regional school district embracing the towns of Foster and Glocester as a "body politic and corporate" and grants to it all the powers and duties pertaining to education conferred by law upon cities and towns generally, including, without limitation, the authority to adopt a name and a corporate seal, to sue and be sued, to acquire by purchase or by condemnation as well as by other means lands and improvements within the district as school sites and to hold title to the same.

In addition, the enabling legislation provides for a Building Committee and a School Committee and prescribes the methods by which their respective members shall be selected. The former is charged with planning, constructing,

furnishing and equipping the district's schools and athletic facilities, and while it is specifically authorized to make contracts or agreements necessary to carry out those duties and powers, it is given no authority which permits it either to raise or expend funds for or on behalf of the School District in connection with any such contractual obligations. The failure to grant it any such financial powers was no oversight inasmuch as the legislature gives the right to raise funds specifically and to spend them at least impliedly to the School Committee. That Committee, in addition to being vested with all the powers generally possessed by school committees, is authorized, subject only to the consent of the School District financial meeting and the approval of the legislature, to raise funds for the construction of regional schools by issuing bonds and by making temporary borrowings on notes in anticipation of the sale of such bonds.

Even this brief outline of the salient features of the enabling legislation makes clear an overall legislative plan that the "body politic and corporate" accomplish its purposes and perform its duties in the field of education through committees, which, although themselves lacking independent status or corporate existence, are made the arms or agencies through which the School District, the "body politic and corporate," acts. The statute, looked at in this light, makes clear that petitioner was in the School District's employ, notwithstanding that he had been hired by the Building Committee.

The meaning we give to P. L. 1958, chap. 109, is the same which the legislature in P. L. 1964, chap. 49, put upon it when, in response to a vote of a School District financial meeting held on December 27, 1963 authorizing the construction and equipping of a new high school and athletic facilities, it empowered the School Committee, on behalf of the School District, to issue bonds in an amount not exceeding $1,850,000 and directed that the proceeds from the sale of those bonds be paid by the School Committee treasurer

for the construction, original equipping and furnishing of the new facilities. Among those construction costs was, of course, petitioner's salary.

Finally, the School District turns to that portion of the enabling statute which permits it "To sue and be sued, but only to a similar extent and upon comparable conditions that a town may sue or be sued" (P. L. 1958, chap. 109, sec. 2 (b)). Then, premised upon the suggestion that proceedings under the compensation act fall within the language "sue and be sued," it argues that it is exempt from liability thereunder inasmuch as it neither voted to accept its provisions nor filed with the director of labor a certified copy of that vote—such acceptance and filing being specifically made prerequisite by G. L. 1956, §28-31-1, to liability of a city or town under the workmen's compensation act.

The question thus raised creates for us a choice of approaches. The petitioner recognizes, as he must, that an insistence upon strict compliance with the acceptance provisions of the act will permit the School District to escape liability. He argues, however, that its overall conduct with reference to coverage for liability under the compensation act is equatable with acceptance, and as examples of such conduct he calls to our attention that the towns of Foster and Glocester before they combined for purposes of establishing a school district had each, in the manner provided by statute, accepted the provisions of the act for their school employees; that the School District was in fact insured for liability under the workmen's compensation act; that the Carrier filed with the director of labor notice that it had renewed a workmen's compensation insurance policy in the name of the School District as employer; and that a budget for the School District as approved at its financial meeting included an item for the payment of the premium on such insurance. In the light of such conduct, petitioner concludes, the School District having clearly manifested an intention to accept the act, should not now, after the injury

as an afterthought, be permitted to avoid paying compensation by relying on its own neglect to meet a technical requirement.

Whether such conduct will excuse its failure to follow the statutory prerequisites where coverage under a compensation act is elective is a question on which such authorities as we have been able to find are divided. Some deny liability unless there has been literal compliance with the statute. *Rugg* v. *Norwich Hospital Ass'n,* 205 App. Div. 174, 199 N.Y.S. 735; *Eaton* v. *Joe N. Miles & Sons,* 238 Miss. 605, 119 So.2d 359. Others predicate liability on an estoppel or something akin thereto. Of these, some apply the estoppel principle strictly. They hold that the doctrine will not apply unless reliance can be shown, and that the acquisition of insurance coverage, even if accompanied by an intention to accept the act, is not sufficient to constitute an acceptance unless accompanied by something in addition, as for example, by evidence that the injured employee knew or heard of the insurance, or relied upon its existence as an inducement to accept employment. *Keeney* v. *Beasman,* 169 Md. 582, 182 A. 566; *L. E. Marks Co.* v. *Moore,* 251 Ky. 63, 64 S.W.2d 426; *Roe* v. *Roe, Iowa,* 146 N.W.2d 236. If we were to follow these courts, petitioner could not recover because there is nothing in the record which even hints that he in any way either knew or relied upon that conduct of the School District which he now equates with acceptance. Additionally, the record fails to disclose that he was in any fashion induced either to accept or to continue in his employment by a belief that, if injured at work, he would be eligible to benefits under the act.

Other courts, perhaps more concerned with achieving substantial justice than with a strict application of an estoppel doctrine, find liability, at least where the deficiency in adhering to the letter of the law on the method of acceptance is technical rather than jurisdictional, if the acquisition of a policy together with all of the other facts in the

case clearly manifest an intention to accept the act. Typical of this approach is *Vogt v. Borough of Belmar*, 14 N. J. 195, 101 A.2d 849, where the court said at 207, 101 A.2d 855: "The beneficent policy of the compensation provision is not to be whittled away by over-nice distinctions and technical formality unrelated to the substance of the right." See also *Chabala v. Westchester County*, 284 App. Div. 341, 132 N.Y.S. 2d 353; affirmed 308 N. Y. 1012, 127 N.E.2d 857; *McGehee Hatchery Co. v. Gunter*, 237 Ark. 448, 373 S.W.2d 401; *Hillman v. Industrial Comm'n*, 190 Wis. 196, 208 N. W. 928; *Garrison v. Bonfield*, 57 N. M. 533, 260 P.2d 718.[1] If we follow these courts, petitioner can recover, inasmuch as the conduct of the School District is reasonably translatable only as evidencing an unmistakable intention to accept the provisions of the act.

On balance, we believe that the ends of justice will best be served in the circumstances of this case by refusing to permit either the School District or the Carrier to take shelter in the lack of letter compliance with the acceptance prerequisites of §28-31-1.

The respondent's appeal is denied and dismissed, the decree appealed from is affirmed, and the cause is remanded

---

[1] In *Garrison* the court, in overruling a prior decision which followed the stricter approach, said at 537, 260 P.2d at 720, "The appellees strongly rely upon our decision in Eaves v. Contract Trucking Co., 1951, 55 N.M. 463, 235 P.2d 530, where we squarely held the failure of the employer in a nonhazardous occupation to file the written election in the office of the Clerk of the District Court rendered the employer and his insurer immune to action under the act, although the bond was actually filed, basing the decision upon the wording of the act and the case of Keeney v. Beasman, 1936, 169 Md. 582, 182 A. 566, 103 A.L.R. 1515, and making reference to the case of Lester v. Auto Haulaway Co., 1932, 260 Mich. 16, 244 N.W. 213. A majority, including the writer, believe the holding in the Eaves case was too strict and that the decision should have gone the other way * * *."

to the workmen's compensation commission for further proceedings.

*Levy, Goodman, Semonoff & Gorin, Jordan Tanenbaum,* for petitioner.

*Gorham & Gorham, John Gorham, Charles H. Anderson,* for American Employers' Insurance Company, respondent.