WIGGINTON, Judge
(dissenting).
The issue before the trial court presented for decision a determination of whether on the first day of the taxable year in question the lands owned by plaintiffs were being used in a bona fide forestry operation.
The undisputed evidence establishes that Parcel A was purchased by plaintiffs in 1925 while Parcels B and C were acquired in 1944. All three parcels of land were used in connection with timber and turpentine operations prior to their purchase by the present owners. Just before plaintiffs purchased these parcels, the merchantable timber growing thereon was cut and removed as pulpwood. No use whatever has been made of the land since its purchase by plaintiffs except new growths of timber were cut from Parcel A in 1930 and 1963 and from Parcels B and C in 1956. The character of the property is undeveloped and unimproved wild timberland. One of the plaintiffs explained that the use being made of the property was “just holding it, taking care of the timber and keeping fire off as much as possible, with no improvements being made.” Since acquiring the parcels in question plaintiffs have never engaged in any programs of planting pine trees, cutting or maintaining fire lanes, selectively cutting the timber as it matured, nor have they engaged in any other customary forestry management practices.
It is my construction of the taxing statutes that the legislature intended for taxing officials to classify real property as agricultural lands entitled to an evaluation for assessment purposes based upon its agricultural use and not upon other uses to which the land might be reasonably adapted.[1] Lands used for agricultural purposes are defined by statute to include only lands being used for bona fide farming, pasture, grove, or forestry operations. I construe this legislative directive to mean that one claiming an agricultural classification for timberlands owned by him must establish that such lands are being used in a bona fide forestry operation. Such an operation is one in which are applied those scientific principles of land preparation, planting, cultivation, protection, and harvesting as are applied in the production of other agricultural products. Merely permitting wild cutover lands to lie idle so that the benefits of such new growth of timber as may result from natural reseeding, nurtured by the favorable climate and rainfall enjoyed in our state, may be reaped as the timber matures, does not in my opinion constitute a bona fide forestry operation. In the case of Florida Industrial Commission v. Growers Equipment Co.,[2] the Supreme Court of Florida quoted with approval a definition of agriculture as pronounced by the Fifth Circuit Court of Ap *889 peals in the case of United States v. Turner Turpentine Co.[3] as follows:
“ ‘ * * * Definitions of agriculture in standard texts and treatises and in decisions in these latter years, have had the widest content. Funk & Wagnalls defines agriculture as including horticulture, fruit raising, etc., “because agriculture is the science that treats of the cultivation of the soil,” Webster’s Unabridged Dictionary, 1935, declares that in a broader sense, agriculture includes farming, horticulture, forestry, dairying, sugar making, etc. The Encyclopedia Brittannica, 14th Edition, Forestry as a Science, declares: “the science underlying the growing of timber crops is therefore nothing but a branch of general plant science”, while the Cyclopedia of American Agriculture says of forests, “if agriculture is the raising of products from the land, then forestry is a part of agriculture.” * * *’”
In Jeffreys v. Simpson[4] this court defined the term “bona fide” as applied to a forestry operation to mean:
“ ‘In or with good faith, honestly, openly, and sincerely; without deceit or fraud * * * real, actual, genuine and not feigned.’ ”
In that case we held that the landowner, in permitting his land to lie fallow'during the taxable year in question after the commercial timber growing thereon had previously been harvested therefrom, was not carrying on a bona fide forestry operation entitling his land to an agricultural classification even though it was his intention to replant the land with commercial pine seedlings as soon as soil conditions would permit.
In the recent case of Walden v. The Borden Company[5] the parcel of land in question was actually being utilized by the owner’s lessee as a pasture for grazing cattle in connection with a bona fide livestock operation, an agricutural purpose entitling the land to an agricultural classification. The Supreme Court held that since the parcel was a part of a larger tract owned by the landowner which was being used in connection with its phosphate operation, such was its primary use and the utilization of the smaller parcel in question for cattle grazing was only incidental. In so holding the court said:
“We have concluded that the legislative classification of agricultural lands for tax purposes was intended to benefit the owner whose lands are dedicated to the named agricultural purposes ‘exclusively’ so used under old Section 193.201 and ‘primarily’ so used under new Section 193.461 whether such use is being made directly by the owner himself or indirectly through an agent or lessee; * * *
Based upon the foregoing authorities I believe it to be legally impermissible for one to acquire a tract of cutover land for investment purposes as was done in the case sub judice, fail to inaugurate or maintain a program of standard forestry practices on the land as occurred in this case, periodically denude the land of such commercial products as a merciful providence has bestowed upon it through no effort or expense on the part of the owner, and then claim as do appellants that he is engaged in a bona fide forestry operation entitling the land to an agricultural classification for tax assessment purposes.
It is my construction of the legislative intent as embodied in our statutes relating to assessment of real property for tax purposes to be that wild, cutover unimproved timberland such as that involved in this case should be valued for assessment purposes at its fair market value on the basis of its highest and best use in an amount *890 which a buyer under no compulsion to buy would be willing to pay, and a seller under no compulsion to sell would be willing to accept.[6] In order to qualify such land for an agricultural classification and entitle it to the favorable tax treatment for assessment purposes conferred upon such lands by the legislature, the burden rests upon the owner to establish that such lands are being utilized in a bona fide forestry operation in accordance with standard forestry practices. No such showing has been made by the owners of the land in this case.
From my examination of the record I find competent and substantial evidence from which the trial judge could reasonably have found as he did that plaintiffs had failed to carry the burden of proving that the parcels of land involved in this proceeding were being used “exclusively” or “primarily” for agricultural purposes, to wit, a bona fide forestry operation. Having so found, he correctly concluded that the assessment made by the respondent tax assessor in an amount agreed upon by the parties as being reasonable was proper and plaintiffs’ claim to an agricultural classification of their lands should be denied.
The judgment appealed should be affirmed.

. Lanier v. Overstreet, (Fla.1965) 175 So.2d 521.

. Florida Industrial Commission v. Growers Equipment Co., (1943) 152 Fla. 595, 12 So.2d 889, 893, 894.

. United States v. Turner Turpentine Co., (5th Cir. 1940) 111 F.2d 400, 405.

. Jeffreys v. Simpson, (Fla.App.1969) 222 So.2d 224, 227.

. Walden v. The Borden Company, (Fla.1970) 235 So.2d 300, 302.

. Walter v. Shuler, (Fla.1965) 176 So.2d 81.